Case number 19-3015 United States of America v. Keniel Ian Thomas, also known as David Morgan, appellant. Ms. Tormina for the appellant, Mr. Coleman for the appellate. Ms. Tormina, good morning. Good morning. Good morning. May it please the court. Rosanna Tormina from the Federal Public Defender's Office on behalf of appellant Keniel Thomas. I'd like to reserve three minutes for rebuttal. Mr. Thomas' 71-month sentence in this case is 14 months higher than the high end of the guidelines range erroneously calculated by the district court. It is 30 months higher than the high end of the range erroneously contemplated by the parties, and it is 41 months, more than twice, the high end of the correctly calculated guidelines range of 24 to 30 months. As we recall, Mr. Thomas' sentence suffers from numerous errors, including two straightforward guidelines errors, the underlying merits of which the government does not appear to substantively contest. Those errors and the sentencing hearing overall were informed by the conflation of two separate, distinct, and materially different crimes. Extortion, which qualifies as a crime of violence under the Armed Career Criminal Act, and fraud, which does not. Mr. Thomas pleaded to and was convicted of extortion, which is a crime of violence because it involves a threat to injure the person of another. Such a threat was issued in this case by telephone to Mrs. Linda Webster, during which Mr. Thomas threatened to kill Mrs. Webster and her husband, Judge William Webster, if Mrs. Webster did not send appellant $6,000. It is this conduct and this conduct alone that constitutes the offensive conviction, and it is this conduct that controls the operation of the United States sentencing guidelines. Because the extortionate demand in this case was $6,000, it was error for the district court to increase Mr. Thomas' offense level by one point under Section 2B2B1 for demanding more than $20,000. The government effectively concedes this error on page 39 of its brief, where it states that it is true that the specific charge in which appellant pleaded guilty involves demands of only $5,000 to $6,000 from Mrs. Webster. That statement not only acknowledges the error with respect to the amount demanded, specific offense characteristic, but it also acknowledges the fact that Mrs. Webster is the only victim of the offensive conviction in this case, and Section 3's vulnerable victim enhancement could potentially apply. Neither the district court and its independent guidelines analysis, nor the government made any argument, because there is none, that Mrs. Webster is in any way unusually vulnerable as the term is used in the guidelines commentary. But even were we to assume that Judge Webster were also a victim of the extortionate and his life was indirectly threatened. Judge Webster, even at the age of 90, is of the least vulnerable among us. Again, neither the district court or the government made any argument that Judge Webster was in any way unusually vulnerable within the meaning of the Section 3A1.1B1, beyond citing his age. And as courts have routinely found, and the government does not dispute, age alone does not suffice for the application of Section 3A1.1's vulnerable victim enhancement. Combined, the amount demanded, specific offense characteristic, and the vulnerable victim enhancement increased Mr. Thomas's guidelines calculation by three levels. It's clear, isn't it established that the defendant did demand a larger sum, $20,000 from Judge Webster? So, I would quibble with the word demand. He requested via an attempt to defraud $20,000. He did not demand via extortion $20,000. At no point, at no point did Mr. Thomas directly threaten Judge Webster. The way I was going with that was somewhere else, which is to say, just as Judge Webster has an interest in the $6,000 threatened or sought from Mrs. Webster, so too, she has an interest in the $20,000 sought from the judge. Even if that were the case, there was no threat, there is no threat involved within the $20,000. There's also no evidence that there was a communication between the two of the $20,000 request, again, via fraud. That conflation really is the problem here. There was no extortionate demand at any point of Judge Webster or Mrs. Webster of any more than $6,000. So, whether we look at them individually or as a unit, the extortionate demand in this case was $6,000. And again... What do you make of the government's observation that there were other victims who were, quote, surely qualified as vulnerable? Okay. So, the language of 3A1.1, the commentary specifically, and this is why it's so important, the government's concession that those, the extra plea conduct does not qualify as relevant conduct. And only relevant conduct can be considered in applying the Vulnerable Victim Enhancement. So, the Vulnerable Victim Enhancement specifically says in the commentary that it means a person who is the victim of the offense of conviction or any conduct for which the defendant is accountable under 1B1.3, relevant conduct. And the government has conceded... Just a second. Yes. Yes. Defendant stipulated to the $20,000. He, that, he, he agreed in the plea agreement and... He agreed to the calculation in which he said $20,000. Yes, Your Honor. But the court, and so, the case that would, that I, that I believe would be somewhat analogous, but certainly distinguishable, and I'll distinguish it for you here, would be the Lasley case, in which the defendant in that case challenged an enhancement to which he said stipulated in his, in his plea agreement. And the court essentially... Which says this court does not allow parties to reopen issues raised by stipulation. Certainly. But there, but in that case, the court made three specific, I would say, three specific statements that, or relied on three specific facts that are not present here. First, it specifically said that the defendant did not rely on the specific enhancement and thus relied on the party's agreement in applying it. That is not the case in this case. The government, the district court specifically put aside the plea agreement in some sense and said... Ms. Termina. Yes. I realize that you're the advocate in this case, but you're also an assistant federal public defender. Yes. The interest of, of your clients as a group lies in their being able to make a binding commitment such as this. That they be able to agree ex ante that this was, so that they have a bargaining chip. But, but, Your Honor, agreeing to... This is a disservice to defendants. I don't believe so. I think that the disservice is allowing, allowing the system to permit defendants to agree to enhancements under facts that simply do not apply. There's, there's ways for the government and there would be ways for the government and defendants to, to account for this type of a behavior. But, but these enhancements don't apply. This is a contract and it's, it's an important contract in which every provision is subject to negotiation and part of a larger deal. And we just can't get into a situation in which we're questioning what is so clearly there in print. It is, it, Your Honor, it's absolutely there in print and, and I, and I still, I do, there, there is an interest and the Supreme Court has recognized it in, in both, most recently in Rosales-Morales, for these guidelines calculations need to be correct. And the district court, despite the party's agreements, has an independent obligation. It must calculate the guidelines correctly. And in this case, the court did not rely on the parties. It specifically said it did not rely on the parties. Calculating the guidelines correctly, meaning correctly in light of the facts, including those that have been stipulated. But, but those facts that have been stipulated, nevertheless, do not, do not make a provision of these, of these enhancements. They, they simply do not. Well, insofar as you're talking about $6,000, it says $20,000. No, the, the statement of offense, there, in the background of the statement of offense, there is a narration of the, of what, of, of Mr. Thomas's preceding contact with Judge Webster. But because there's a narration that doesn't turn that conduct into a crime that, that it is not, and, and in fact, that's a part of Lasley. What's interesting about what the court, that's one of the distinguishing factors of Lasley, was that the court, this court, specifically acknowledged that the facts supporting the enhancement that was at issue were contained in the statement of facts that were attached to the plea agreement. There are no facts in the statement of facts that would turn a fraudulent demand into an extortionate demand. There are no facts in the statement of offense that turn Mr., or sorry, Judge Webster into a vulnerable victim. You're now saying that, that the plea to extortion should also be treated by the district court as a plea to fraud? No, no, no, no. The plea is, is only to extortion. Right. And so the district court has an independent obligation to calculate the guidelines correctly, regardless of the party's agreement. And, I mean, Your Honor, I believe it's distinguishable, I don't believe that the court in any way relied on this agreement in calculating, making an independent, she, in fact, the court stated, this court has an independent obligation to review how the guidelines apply. Essentially, regardless of the PSR and regardless of the plea agreement. So this is similar to the cases where an issue is, is not pressed, but passed upon, the court had the opportunity to, to analyze this issue. It did analyze this issue and, and its guidelines calculation is incorrect. Now, should the court, I believe that this is an error, a district court error of calculating the guidelines, but should the court find that it is not, then it is absolutely ineffective assistance for counsel to have agreed to these two guidelines, calculate, calculations or enhancements, excuse me, when they simply do not apply. They don't apply legally. They don't apply factually. And, and I think that, that if the, I think that again, to some extent the, the government concedes the underlying merits that, that the, the only, at page 39, they concede that the offense of conviction involves only an extortionate demand of $6,000 from, from Mrs. Webster. And to get at that, whether it be directly, which I believe that the court has the power to do, or indirectly through the ineffective assistance, I think that these are, these are plain, plain errors that under either avenue can be corrected. Can I ask two quick questions? Is your client's position that he would have rejected the plea offer if he had not had ineffective assistance on the vulnerable victim and the amount demanded? The, the, I think that the government raised what it is essentially, is your question, does he need to have rejected, gone to trial, but for those things, or, or is the substance, I'm sorry, the, I think my question, my question is the, is the U.S. versus Marshall question, which is, yes, right. Your Honor, would he have gone to trial otherwise? No, so U.S. versus Marshall was, was, was a case that did not involve sentencing error. The allegation in U.S. versus Marshall was the defendant wanted his attorneys to, I think, challenge the, the qualifications of the government's expert witness at trial. But there are sent, I don't remember the names, but there are sentencing cases that are, that make exactly the same point. No, this, well, there's, there's also sentencing cases and there's, and, and there, in our briefs that directly quote it, that it's, that the prejudice here is whether or not the sentencing proceeding would have been different. So would he have gotten, is it reasonably likely that he would have gotten a different sentence? That's where there's, that's where there's no plea. Now we're talking, those cases are not plea cases. The problem we have here is a plea, and if you want to get out of the plea, assume for the moment you can't get out of the plea for your other reasons. But, but if you want to get out of the plea, then the, then the test is supposed to be, you have to show, but, but for the alleged errors, there wouldn't have been a plea, you would have rejected the plea. What, I don't believe that, that, that here we're saying, like, at least in the initial, in the initial, sorry, in the, the straightforward allegation of error by the district court, where that allegation is that the district court had an independent obligation to, to calculate the guidelines correctly. Independent of the plea agreement. No, I'm not asking that question. Okay. I'm asking, you said that if that's, if we didn't accept that, then it's clear ineffective assistance of counsel. So now I'm, so I'm just trying to follow up on what ineffective assistance of counsel means under these circumstances. And my understanding is that it means you have to, you know, show that without those errors, he wouldn't have accepted the plea. But I would think that's, I don't think that that's appropriate in this case where someone has accepted, accepted guidelines errors that don't apply. Does that make sense? Because if you remove, he's already accepted those, those errors. So I don't believe that that is the appropriate way to look at this. And, and there is, I believe it's Rodriguez. Can we just go back for a second? Yes. I want, I want to try to tease out the different arguments. Okay. So assume we don't agree with your argument that we assume the plea is still good, but for ineffective assistance, but the plea is still good. And that we take judge Ginsburg's point that there are stipulations. And so there's no more challenging that the plea means you can't challenge that part. And then I took your argument to be well, that it was ineffective assistance for the defense counsel to accept, to enter into a plea that had those erroneous positions in it. Right. That's your argument. All right. Yes. Yes. Those circumstances, there has to be a reasonable probability that, but for the counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial. I don't, I don't believe that that's true. Your Honor. I believe because there, because the, the errors are guidelines errors. I, I'm trying to tease out what, what the implications of what you're saying because we have guidelines errors that he agreed to that don't apply. It's not possible to say, but for those errors, he would have gone to trial. He agreed to guidelines calculations that don't apply. They're higher than are applicable. So the question would be. You're not taking the position that if he had no, if, but for these errors, he would, he would be going to trial. You're not taking that position. I don't understand. I don't understand how that would apply because he's worse off in the plea agreement. So, so, so I, I, I simply, I don't want to say that I'm not taking that position. I'm just having a hard time understanding. In, in, in effective assistance with respect to the plea, he's entitled to counsel who understands the guidelines and, and who can, could counsel him with respect to a plea, I think. I understand. And, and if you, if you have ineffective counsel who entered into a bad plea, and you get out of the plea, if, but for that bad counsel, you would have gone to trial. That's, that's Lee versus United States. That's the classic test. But I, but why I, and I'm happy to try to find the case, but, but the cases, but I believe that why would it not be that he is just entitled to effective counsel that would counsel him correctly in, with respect to a plea? He is. But the question is, do you get out of the, I guess there's no reason to, to argue about that. Okay. I'm sorry. That's what the case law says. But, but we're, but we're not making any progress on, on, on arguing about what the case law says. Let me ask another question. We have gone all this time and not discussed the plea provisions that the government says, says mean you can't challenge anything other than the extent of the departure. Don't you think you should address that? Absolutely. Your Honor, this, I believe that this case, first and foremost, most is governed by this court's, this court's precedent in Godoy, United States versus Godoy, which has been reaffirmed several times since then, that the, that the language of the appellate waiver, if characterized differently by the court at oral argument, or sorry, at, during the 11C1C. Fundamental. Sorry. During the, it has to be a fundamental mischaracterization, right? It doesn't have to be. I don't see why it would have to be fundamental. It's because that's what our cases say. The cases say that whatever, whatever, however, the court characterizes the plea agreement controls. It has to be a fundamental, but that has to be a fundamental mischaracterization compared to what's in the plea agreement. In those two, in the two cases, in, in, in both Godoy and I believe Ferreri, there's also Brown, there were fundamental mischaracterizations, which actually, I think, make this case even easier because there, here, it wasn't, it wasn't a fundamental mischaracterization. It was actually a clarification of the natural understanding of what the words to the extent that mean. The court interpreted it as unless, and there's no reason to believe that a defendant, and, and Godoy certainly says this, that, that the, it's the, how the defendant would, would understand those words. There's no, no reason to believe that the defendant would understand those words in a more nuanced way than the district court explained. And the district court used the word unless. We've, we cited cases in our brief where courts replace the words to the extent that with unless, and in this case, because the court used the word unless, and again, even it had it not, we would, we would argue that unless is the most natural reading of, of the provision, and to, and even if it is 75% one way and 25% the other, it's not, it's ambiguous and subject to the, the, the language needs to be strictly construed against the government. So I believe here that there's, there is two conditions that the court set forth that would allow the defendant to plea with no other conditions attached. So it was if the court, sorry, if the court sentenced the defendant above the statutory maximum, or if the court departed above the guidelines that it had determined, then Mr. Mr. Thomas could, could appeal. There are no other, no other conditions beyond that. And so I, I believe both under Godoy and then even, even were we not to, to use the courts unless as binding, it certainly is evidence that that is the, that's the natural reading of that language. It's how the court interpreted it. And it's how, again, how Mr. Thomas would naturally interpret it. I don't see how he would, he would interpret it any different. So I simply don't, don't see that, that, that the, the appellate waiver here is an issue. Another thing it would be another judge. Judge Ginsburg, do you have a question? No. All right, then we'll give you a couple of minutes and reply. We'll hear from Mr. Coleman now. Thank you. Good morning, your honors. My name is Nick Coleman. I represent the United States. I think much of appellant's argument, both in his brief and here today, seems to be more of the kind of arguments that women raise if there were no plea agreement. But this is a plea case. And the reality is that in his plea agreement, he both waived the right to appeal his sentence, except to the extent that it exceeded the applicable guidelines range or the statutory maximum. And he also stipulated to some basic facts as part of the actual guidelines calculation itself. Those provisions have meaning. They should be enforced by this court and thus appellant's challenges on those subjects should be treated as waived. I'd like to begin with the question of the plea waiver. And I think it's telling that appellant here today says that, in fact, the judge did not mischaracterize the plea agreement in a fundamental way. And thus, cases like Godoy do not control. I think when you look at how... To be fair, that's not what she said. What she said is that the judge clarified the meaning, so it wasn't fundamentally inconsistent. It was completely consistent. That's her position. I realize that that's her position. You have to answer that argument. Right. So, and I think as to that argument, I have two responses. First, just looking at what Judge Howell actually said. At the very end of her sort of very brief shorthand characterization of the plea waiver, which is designed, of course, in this context, simply to make sure that she refers expressly back to the page and paragraph and says, as described there. So, I don't think that the judge was trying to say that it was her words that controlled how this plea waiver should be interpreted, but rather she was saying it's the written waiver. With respect to the written waiver itself, I don't... to the extent with unless in the way that appellant argues is simply not reasonable. Because in that case, what it says is, although what the parties are saying is that you cannot appeal essentially how this sentence was determined. In other words, you cannot appeal how the guidelines were calculated. You can't appeal your sentence except to the extent that the court exceeds the That means that you can appeal that kind of a decision. There's no reason. There's no reason why the decision to exceed the statutory maximum or go above the guidelines range should then make everything else appealable. That isn't, we submit, a reasonable interpretation of the provision. And certainly that, you know, it certainly isn't what the government believed the parties were agreeing to. And I don't think that it can be reasonably said that that is what the parties actually understood in this instance. As such, we think that the appeal waiver should be fully enforced. And what is at issue here today is only the decision of Judge Howell to depart upwards. You know, Mr. District Judge varies in the language, leave aside whether it's fundamental or not, but varies in the language from the plea agreement. I don't understand why your office doesn't have a policy of assistant U.S. attorneys pointing out to the judge the exact language and asking the judge to use the exact language rather than than any modification. I don't know. This is probably the third of the fourth of these cases. I've sat on and Believe me. I'm a random assignment here. So there must be a lot of other ones like this too. Why is it? I've been on two of them. Why is this happening? Right? So in answer to your question, your honor, I can say that since Godoy, we have within our office had training for assistant U.S. attorneys on this subject that we have tried both to make sure that the plea waiver itself is written in a very clear way, but also to have assistant U.S. attorneys, you know, step in, you know, we have asked them to step in and correct district judges. If they make statements that there are a lot of pleas. And so unfortunately, they're going to be some instances where the assistant U.S. attorney may not jump in when the district court speaks. The one thing I could recommend is that perhaps district judges should be asked perhaps simply to read the language of the plea waiver rather than try to recharacterize it or summarize it, etc. Because I do agree that when the judge tries to paraphrase or summarize or put it in layman's terms that it does create the potential for later litigation saying that, well, it's the judge's words that should control and not what was written. I think Judge Howell tried here by expressly referring back to the language the page and the paragraph number of the agreement. She tried here to refer back to that to indicate that, look, again, it's not her words that control. That's not the plea waiver. What she says, it's what appellant actually signed. And I think it's reasonable for district judges to assume that defendants who are represented by experienced counsel that they've gone over this and they understand it. And I don't think that the written plea waiver is written in such a way that it's really that confusing. I think it's pretty clear what it that it means what it says, which is that you can appeal to the extent that it exceeds the statutory maximum of the guidelines range, but you can't appeal anything else. And it's only to that extent. Again, though, even if this court were to have some concerns about that, I don't think that as we've explained in our brief appellant's arguments here, simply don't have merit, even if that appeal waiver were considered to be problematic. With respect to the two enhancements that appellant has focused on here today, and that's the $20,000 and the vulnerable victim enhancements, those were stipulated to and as we've said in our brief, you know, this is, you know, this is in the heartland. We think of what would be covered by the invited error doctrine. The parties stipulated to these enhancement appellant stipulated for it. He essentially recommended to the court that it apply these enhancements as part of the deal. And to say that the judge erred now, we think that the invited error doctrine would preclude such a challenge. As to whether counsel was ineffective in agreeing to that deal, I think Marshall and Lee are very clear. Appellant has, he can't just argue that, well, here's this aspect of my plea deal that I don't like. So fix the plea deal for me, essentially take the plea deal and strike those provisions or allow me to challenge them now. And I don't think that that's the test. The test is you take the plea deal as a whole, and there's a good reason for that in this case. The statement of offense that appellant signed on to, which is just with respect to the Webster's, would have essentially was admitting to multiple counts of with respect to Judge Webster and extortion with respect to Mrs. Webster. In other words, there were a lot of counts here that he signed on to the facts for alone. The government, what he was essentially admitting was that he could have been found guilty of multiple counts. And although the extortion guideline doesn't allow grouping of amounts, the fraud guidelines certainly do, and certainly would have supported a loss amount well in excess of $20,000. Dollars. So this was a over. This is a plea deal in which the government gave up the right to charge multiple counts and appellant in return admitted to facts or to enhancements that yes do increase, you know, his sentence of what just a narrow extortion count might have supported as to the loss amount and perhaps as to the vulnerable victim. But that was the deal that the parties made. And since appellant is not apparent, I'm not quite sure after listening to appellant's argument whether he is saying he was prepared to go to trial. I guess he seems to resist saying one way or the other, but the fact that he is unwilling to say that I think under Marshall means that you know that this argument should not be heard and he can't make make the claim that his counsel was ineffective unless he's prepared to say I got this bad advice from my attorney. He should have told me I could challenge these and therefore I was prepared to go to trial and all these other counts that the government could have brought me brought against me. He's not prepared to do that. I think for a good reason because he didn't want to make that kind of a deal or to go to trial and that kind of evidence. So, you know, Chris, I appellant has has not raised here today. The other challenges I think is to the upper departure. I'm not sure if the court has questions about those those provisions. Just to just to make sure I understand the government's argument on ineffective assistance. Yes, you agree that the mitigating evidence the failure to review the government exhibits the failure to submit the support of letters and the failure to submit documentation showing the disproportionately longer sentence he would have because he was an alien. Those should all be remanded under our normal remand of ineffectiveness issues, correct? Yes, because right now we simply don't have the record to address those and those don't go to the plea deal itself as I understand it. I think those have to do with what he should have done. It's sentencing once the deal was already in place again, as we've said we think that as this court is recognized the remand doesn't necessarily means there has to be an evidentiary hearing because I think the court could judge how could say look those I've looked at this and it wouldn't have made any difference, but that's in first instance for the district court to determine with a more fulsome record. She would at least have to look at that information. So I suppose, you know, it wouldn't be possible to say it wouldn't be possible to say supporting letters wouldn't make any difference without looking at the supporting letters. I I suspect that that's correct your honor, which is why there has to be more factual development of those sort of rather narrow claims again. Those claims of course, you know presuppose that the plea deal was valid and fully enforceable and it's just that counsel should have presented these which might you know, in theory, I suppose might have caused us how to consider imposing something less. Mr. Coleman the the the request for a remand on ineffective assistance made by the defendant is by no means so limited to as to just be submission of documentation, right? It was the failure of counsel to raise the Smith issue a variance at all, even though it was in the PSR. Right? So I don't think that that you know, again, I'm not really sure what more could be said on that particular narrow claim simply because it was presented and judge how considered it. She said I'm not going to grant it. So I'm not here. She didn't hear from counsel any reasons not to grant it. So again, we have we we can see that under Rashad these sort of very narrow sentencing related sort of mitigation type claims have to be remanded again. It's up to I think the district court in the first instance to decide it has to be remanded but I just don't think that the way in which you phrased this part of your concession about remand. It's the fourth item in your list on page 65 is captures the the With regard to counsel's failure on Smith. All right. Well again, so these these claims I think should be you know, they they have to be remanded and exactly what you know, what what additional procedures judge Howell should undertake to develop the record I think is in the first instance left up to a towel and we will see I suppose what she says. Well her decision about what procedures to follow or what results to reach is going to be informed or at least the breadth of it's going to be informed by the terms of the remand and I just think it's putting on blinders to talk simply about submitting documentation, but maybe we'll I mean certainly I don't think that you know in terms of whether or not she erred based on what she was given or that her reasoning in rejecting the Smith variance as we've submitted in our brief. We don't see any court error as to whether or not counsel should have provided other information that would have changed her mind that yes, we agree has to be remanded and we will see I suppose or what it is that judge Howell believes would have happened if that information had been presented. If there are no further questions, we would respectfully submit that the judgment of the district court should be affirmed and a limited remand as we described on page 65 of our brief should be undertaken. Thank you. All right. Thank you. Mr. Coleman. Mr. Taylor meet. Why don't you take two minutes? I apologize. I needed to unmute. Thank you, your honor. First. I wanted to say that to be very clear. I am not unwilling to say that defend that the defendant would not have otherwise going to trial but for the ineffective assistance in this case. I I my discussion with judge Garland was merely disputing the underlying premise that that is what needs to be shown that I I think that it's and if that is something that that there are cases case law that says that the operative prejudice is to the the sentencing hearing in light of these guidelines errors even in the plea context. I don't see why why it would be any different but I would ask if there's any I think that such a ruling allowing ineffective assistance in the in the calculation of guidelines and agree and and misrepresenting what the guidelines are to a particular defendant in the context of a plea and having that that defendant be stuck with that plea. I think that that is a rule that that that certainly my office that would would be would not want in effect. So I'm happy to submit additional additional briefing on that. But if the choice was whether Mr. Mr. Thomas would have gone to trial with effective assistance or if he pled guilty to to everything that he was there for he he would have been sentenced for anyway, he ended up pleading guilty to to everything. He got no benefit out of this plea. So I would say then he would have gone to trial because he got no benefit from this plea count. He got one count after a narrative that would have supported several your honor, but one account is meaningless. All one count does is it it lowers his court assessment from 100 to $100 for one count or $100 per count one count is meaningless to a defendant except for that court assessment. So I don't understand what why the government keeps keeps harping on this this one count issue. It really is of no consequence. I'm not sure that it's important. It's simply a response to what you were saying. I think if I take your point correctly, you made it a moment ago is that the question is whether but for such assistance as he got there was a reasonable probability that the sentence would have been different that that's what I believe the prejudice analysis is that's correct. We'll go back to the books after argument. Yes, and I'm and I'm again happy. I think that this is an important and very important issue that that would affect every client that we have. So so to the extent that this is something that's going to control here. I think it's important that that I that I respond to it. I also want to say with respect to you. Could you then submit something very quickly? Sure. I'm a question of whether the lead test it does not apply where the issue is the calculation of sentencing guidelines in the plea in the plea. Yes. Yes, your Honor. I also want to say that with respect to the invited air issue, we would not have raised this these guidelines error arguments in light of this the plea were it not for the courts specific statement during the plea hearing that it was not relying on the plea. So I want to make that clear to the court. I understand that Lasley is out there. I believe that it was distinguished will be distinguishable because Lasley made it a point to say that the court relied on the relied on the stipulation had no occasion to to pass upon it and that the government indeed did not proffer facts in support of the stipulation at the sentencing hearing. So it was just taken as a given and and in that sense, no one had the opportunity to deal with the issue in this case. The court did say essentially regardless of what the parties are going to have agreed to I have an independent obligation. That's what I review these issues. Isn't that what that's what the plea agreement said that the judge has an independent obligation and the judge always has an independent. Yeah, the judge always has an independent obligation but because but but not only did she say that but then she she went step by step and did give reasons for the application. She did justify her application as opposed to what happened in Lasley, which again, it was just taken as a given. No one discussed it. It was discussed both in the government's sentencing memorandum. It spent up it it there was a paragraph about vulnerable victims in the sentencing memorandum and during the the sentencing hearing the judge did take went step by step and explained why she was applying the vulnerable victim enhancement. So again, that is why I brought brought up the issue. I would not have brought it up but for that information in in in this particular case that I believe distinguished the case from Lasley. All right, let me stop you if there if there are no other questions, there are no other questions or sorry. No, that doesn't make sense from the judges. I do I do because we haven't spoken about the other issues. I did want to say we are still asserting them the government made it seem like because I hadn't discussed them. I was giving them up. I'm not we've literally just run out of time. All right, we have we have that point. Let me ask my two colleagues if we can put a five day schedule on this submission and give the same to Mr. Coleman, of course. Yes, certainly. Okay. Hey, so we're clear on that. All right, your case is submitted. Thank you so much. Thank you.
judges: Henderson, Garland, Ginsburg